**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| ANGEL I. ASH, Parent and Next Friend of R.A., a Minor, | |
| Plaintiffs, | |
| v. | Cause No. 3:26-cv-983 |
| BASHOR CHILDREN'S HOME, INC.; SEAN McCRINDLE, in his individual and official capacities; and JOHN/JANE DOES 1–10, in their individual capacities, | |
| Defendants. | |

**COMPLAINT AND DEMAND FOR TRIAL BY JURY**

COME NOW, Angel I. Ash, individually and as Parent and Next Friend of R.A., a minor, and do hereby bring this action against Defendants Bashor Children's Home, Inc. (hereinafter "Bashor" or "the Facility"); Sean McCrindle, in his individual and official capacities; and John/Jane Does 1–10, in their individual capacities, for damages suffered as a result of the deprivation of R.A.'s constitutional and statutory rights, the breach of duties owed to R.A. while in the Facility's custodial care, and the resulting injuries to R.A. and to Plaintiff Angel I. Ash. Plaintiffs hereby request a jury trial in this matter.

**I.  INTRODUCTION**

1. This action is brought pursuant to the Fourteenth Amendment of the United States Constitution, Title III of the Americans with Disabilities Act ("ADA"), Section 504 of

1

the Rehabilitation Act, 42 U.S.C. § 1983, and Indiana common law and statutory law, including the Indiana Crime Victims Relief Act, Ind. Code § 34-24-3-1.

2. Plaintiff Angel I. Ash and her minor son R.A. reside in St. Joseph County, Indiana. Defendant Bashor Children's Home, Inc. is a private not-for-profit corporation located in Elkhart County, Indiana, that operates a staff-secure residential treatment facility for court-placed juveniles.

3. R.A. is a qualified individual with disabilities and was, at all times relevant, in the involuntary custodial care of Bashor pursuant to a juvenile-court placement initiated by the St. Joseph County Juvenile Probation Department.

4. Bashor is a recipient of federal financial assistance, including Title IV-E foster-care funds and other federal funds passed through the Indiana Department of Child Services, in connection with the residential services it provides.

5. Defendants, with deliberate indifference to R.A.'s known and serious disabilities and medical needs, failed to feed him adequately, failed to administer and document his prescribed medications, failed to monitor his medical condition, failed to respond to repeated warnings from his mother, his primary-care physician, and his long-standing treating psychiatrist, and failed to supervise him with the care required of a residential facility serving a court-placed juvenile. As a direct and proximate result, R.A. suffered a witnessed cardiac arrest on April 29, 2025, an eleven-day pediatric intensive-care admission, and lasting physical, neurological, cognitive, and behavioral injuries. Plaintiff Angel I. Ash and R.A. have suffered, and continue to suffer, emotional, pecuniary, and actual damages.

## II.  JURISDICTION AND VENUE

6. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367, the Fourteenth Amendment, Section 504 of the Rehabilitation Act, the Americans with Disabilities Act, and 42 U.S.C. § 1983.

7. This Court, without regard to the amount in controversy, has jurisdiction over Plaintiffs' requests pursuant to federal and Indiana statutes.

8. Venue is proper in the Northern District of Indiana, South Bend Division, because Defendant Bashor Children's Home, Inc. is located in Elkhart County, Indiana, and a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred within this District.

## III.  PARTIES

9. Plaintiff R.A. is a fifteen-year-old minor with documented disabilities who, at all times relevant, resided with his mother and legal guardian in St. Joseph County, Indiana, except during periods of out-of-home placement, including the residential placement at Bashor Children's Home that gave rise to the injuries alleged herein. R.A. is identified by initials pursuant to Federal Rule of Civil Procedure 5.2(a)(3) and brings this action through his mother and next friend, Angel I. Ash.

10. Plaintiff Angel I. Ash is R.A.'s adoptive mother and legal guardian.

11. Defendant Bashor Children's Home, Inc. ("Bashor") is an Indiana not-for-profit corporation with its principal place of business in Goshen, Elkhart County, Indiana. Bashor operates a licensed staff-secure residential treatment facility for court-placed juveniles and is a recipient of federal financial assistance.

3

12. Defendant Sean McCrindle is, on information and belief, the President and Chief Executive Officer of Bashor Children's Home and is the senior executive responsible for Bashor's policies, procedures, training, hiring, supervision, and operation. He is sued in his individual and official capacities.

13. Defendants John/Jane Does 1–10 are, on information and belief, employees, agents, or contractors of Bashor Children's Home, including youth-care workers, licensed and unlicensed nursing staff, supervisory staff, and administrators, who personally participated in or supervised the acts and omissions complained of herein. Plaintiffs will amend this Complaint to name the Doe Defendants individually once their identities are ascertained through discovery.

14. At all times relevant to this Complaint, Bashor and the individual Defendants acted under color of state law within the meaning of 42 U.S.C. § 1983 by performing a function traditionally reserved to the state—the custodial care and confinement of court-placed juveniles—pursuant to Bashor's license from the Indiana Department of Child Services and its contractual relationship with the State of Indiana and its political subdivisions.

15. On July 1, 2025, Plaintiffs, through counsel, served a Notice of Tort Claim under the Indiana Tort Claims Act on (a) Sean McCrindle, in his capacity as President/CEO of Bashor Children's Home; (b) the Office of the Indiana Attorney General, Tort Claim Investigations; and (c) the Indiana Political Subdivision Risk Management Commission. The required statutory notice periods have elapsed.

### IV.  FACTUAL ALLEGATIONS

16. R.A. is a child with multiple documented disabilities, including Autism Spectrum Disorder, Attention-Deficit/Hyperactivity Disorder, Disruptive Mood Dysregulation

Disorder, Generalized Anxiety Disorder, post-traumatic stress disorder, major depressive disorder, dyslexia, and a documented cognitive impairment (Full Scale IQ 69).

17. R.A. has documented food aversions and an Avoidant/Restrictive Food Intake Disorder–spectrum eating pattern that substantially limits the foods he will consume.

18. R.A. has a documented history of paradoxical or adverse reactions to multiple medications, including but not limited to risperidone, dextromethorphan, olanzapine, fluoxetine, escitalopram, carbamazepine, aripiprazole, methylphenidate, guanfacine, and clonidine. These adverse-reaction profiles were disclosed to Bashor prior to and during R.A.'s placement.

19. Jagadeesh Reddy, M.D., has been R.A.'s treating psychiatrist since 2019 and is R.A.'s long-standing prescriber of psychotropic medication. Among other medications, Dr. Reddy was the prescriber of the propranolol used to manage R.A.'s tremors.

20. John A. Whitney, M.D., of Beacon Medical Group is R.A.'s primary-care physician. Dr. Whitney first met Plaintiff Angel I. Ash and R.A. approximately one month before R.A.'s residential placement at Bashor began. The bulk of R.A.'s long-standing prescribing and treatment history is therefore held by Dr. Reddy, not Dr. Whitney.

21. On February 21, 2025, Plaintiff Angel I. Ash, R.A., and a Logan Center community case manager participated in a pre-admission interview with Bashor staff via videoconference. In that interview, Ms. Ash disclosed R.A.'s adverse-medication history, food aversions, and developmental and behavioral profile.

22. On April 15, 2025, R.A. was admitted to Bashor's Geyer Cottage by the St. Joseph County Juvenile Probation Department. Bashor accepted R.A. into its custody and

assumed responsibility for his medical, nutritional, educational, supervisory, and developmental care.

23. Bashor's initial Treatment Plan dated April 15, 2025 expressly listed risperidone and dextromethorphan as allergies and recorded R.A.'s active medications, including amantadine, sertraline, and divalproex. Bashor was therefore on actual notice from the first day of placement of R.A.'s adverse-medication profile and complex medication regimen.

24. Notwithstanding Bashor's assumption of full custodial and medical responsibility for R.A., Bashor's contemporaneous records for the period of R.A.'s placement reflect a near-total absence of substantive documentation of his day-to-day care.

25. The Medication Administration Record forms produced by Bashor for the period of R.A.'s residential placement are facially incomplete. The MAR grids labeled with risperidone and dextromethorphan columns—documented allergies for R.A.—are blank or substantially blank. Substantial portions of the medication records contain no initials, no times of administration, no dosages, no nurse signatures, and no PRN-administration entries.

26. A significant portion of the medical and nursing records Bashor produced for R.A. consist of one-page cover sheets and similar single-page forms bearing only a performer or approver signature, with no narrative content, no underlying treatment data, no vital signs, no nursing assessments, and no progress notes.

27. Multiple Bashor cover sheets and reports show "Performed By" dates months after the dates of service, including a Medication Log dated April 30, 2025 performed on September 23, 2025; a Medication Report dated April 30, 2025 performed on August 20,

6

2025; and an Immunization Record dated April 15, 2025 performed on September 23, 2025. This pattern is consistent with bulk back-signing of records rather than contemporaneous documentation of care.

28. Bashor produced no daily shift narratives, no fifteen-minute observation logs, no bed-check logs, no meal-tray records, no intake-and-output logs, no sleep charts, no bathroom-use logs, no vital-sign flow sheets, no incident reports, and no internal communications concerning R.A. during his placement.

29. From the first days of R.A.'s placement at Bashor, Plaintiff Angel I. Ash repeatedly contacted Bashor's medical staff by telephone, in writing, and in person to express specific concerns about (a) the administration of R.A.'s prescribed medications, (b) the return of his body tremors, and (c) his inability or refusal to eat. Bashor's medical staff failed to record, respond to, or act upon her reports.

30. During R.A.'s residential placement at Bashor, Bashor's medical staff contacted the office of Dr. Reddy, R.A.'s long-standing treating psychiatrist, on more than ten occasions concerning the administration of R.A.'s psychotropic medications. On those calls Dr. Reddy informed Bashor's medical staff that Bashor was distributing R.A.'s psychotropic medications incorrectly. Bashor failed to correct its medication-administration practices following Dr. Reddy's warnings.

31. In June 2025, after R.A.'s discharge from Riley Hospital, Dr. Reddy advised Plaintiff Angel I. Ash that Bashor's medical staff had contacted his office on more than ten occasions during R.A.'s placement and that he had repeatedly instructed Bashor that it was distributing R.A.'s psychotropic medications incorrectly.

32. Notwithstanding R.A.'s documented food aversions and Avoidant/Restrictive Food Intake Disorder–spectrum eating pattern, Bashor failed to provide R.A. with food he was able to consume, failed to document his caloric intake, and failed to monitor or document his weight, hydration, or urinary output. R.A. had "barely been eating" at Bashor for days, as Plaintiff Angel I. Ash later reported to Goshen and Riley clinicians.

33. On April 28, 2025, Dr. Whitney transmitted a letter to Bashor stating that risperidone and dextromethorphan were not true allergies for R.A. but adverse-effect reactions. The letter was transmitted on the same day R.A. was sent in acute decompensation to Goshen Hospital's Emergency Department. On information and belief, Bashor failed to process, act upon, or escalate Dr. Whitney's communication in any timely or meaningful way.

34. On August 21, 2025, during an outpatient developmental-medicine telehealth visit at Riley Hospital for Children attended by Plaintiff Angel I. Ash and R.A.'s juvenile probation officer, R.A. disclosed for the first time that during his residential placement at Bashor he had obtained and used vaping devices known as "geek bars," other illicit drugs, and alcohol. R.A.'s disclosure is direct evidence of Bashor's failure to discharge its supervisory duty to a court-placed juvenile.

35. By the evening of April 28, 2025, R.A.'s condition had so deteriorated that Plaintiff Angel I. Ash insisted he be transported from Bashor to a hospital emergency department. He was taken to Goshen Hospital, where a twelve-lead electrocardiogram demonstrated a severely prolonged corrected QT interval of 606 milliseconds. R.A. was transferred to Lutheran Hospital in Fort Wayne, Indiana.

36. During the night of April 28–29, 2025, while at Lutheran Hospital, Plaintiff Angel I. Ash was physically holding R.A. up so that he could use the bathroom when R.A. stopped

8

breathing and turned grey. Plaintiff Angel I. Ash immediately informed the nurse present in the room that R.A. had stopped breathing, and she was about to begin cardiopulmonary resuscitation herself when the nurse called Code Blue. R.A. was intubated. After intubation, the treating physician informed Plaintiff Angel I. Ash that additional chest X-rays were necessary; the X-rays revealed pneumonia, and the physician started R.A. on an intravenous antibiotic in preparation for transfer. R.A. was then transferred to the Pediatric Intensive Care Unit at Riley Hospital for Children in Indianapolis.

37. Within approximately one hour of R.A.'s arrival at Riley Hospital for Children on April 29, 2025, clinicians informed Plaintiff Angel I. Ash that R.A. had both pneumonia and an influenza-type viral infection (subsequently confirmed in Riley's records as parainfluenza).

38. R.A. was hospitalized at Riley Hospital for Children from April 29, 2025 through May 15, 2025. His discharge diagnoses included cardiac arrest, seronegative autoimmune encephalitis, acute encephalopathy, focal seizures, aspiration pneumonia, acute respiratory distress syndrome, acute kidney injury, sepsis with septic shock, and opioid withdrawal from treatment medications.

39. During R.A.'s admission, on May 9, 2025, Riley Hospital's genetics team reported that Rapid Genome Sequencing returned negative for any pathogenic or likely-pathogenic variant. No inherited genetic explanation for R.A.'s cardiac arrest was identified.

40. On May 12, 2025, R.A.'s treating physicians at Riley Hospital permanently discontinued propranolol because of his ongoing sinus bradycardia, identifying the medication as incompatible with his cardiac physiology under the conditions of malnutrition and incorrect dispensing that existed at Bashor.

41. Since discharge, R.A. has carried new chronic diagnoses of atypical migraine, daily headache, post-encephalitic syndrome, and depression, in addition to ongoing autism spectrum disorder and behavioral problems. R.A. is currently prescribed medication for depression, and has been prescribed intranasal diazepam for seizure rescue, reflecting ongoing seizure risk.

42. In May 2026, R.A. underwent a battery of neuropsychological testing at Riley Hospital. The neuropsychologist documented, among other findings, that R.A. does not use his left hand as he should despite being right-hand dominant, that he has fine-motor-skill deficits, and that his handwriting is impaired as a result of those deficits. These findings are consistent with persisting neurological injury attributable to the events of April 2025.

43. R.A. has suffered, and continues to suffer, severe physical, neurological, cognitive, emotional, behavioral, and educational injuries; loss of normal life experiences; significant pain and suffering; and the need for substantial continuing medical, neuropsychological, therapeutic, and educational services.

44. Plaintiff Angel I. Ash has suffered, and continues to suffer, severe emotional distress and substantial economic damages, including lost wages, caregiving expenses, and out-of-pocket medical-related costs. As a result of Defendants' actions, Plaintiffs have suffered and continue to suffer educational regression, emotional harm, financial strain, and disruption to their family life.

## V.  COUNT I – VIOLATION OF THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION

45. Plaintiffs hereby replead and incorporate by reference paragraphs 1–44.

46. R.A. is an individual with a disability and was, at all times relevant, in the involuntary custodial care of Bashor pursuant to a state-court placement.

47. Defendants, while acting under color of state law, owed R.A. a substantive due-process right to reasonable safety, adequate nutrition, appropriate medical and psychiatric care, and protection from harm while in custody.

48. Defendants' actions and inactions were deliberately indifferent to R.A.'s known and serious disabilities and medical needs. Defendants' deliberate indifference is established in particular by Defendants' persistent disregard of the warnings of R.A.'s long-standing treating psychiatrist, his primary-care physician, and his mother that Bashor was administering R.A.'s medications incorrectly and failing to meet his nutritional and supervisory needs.

49. Defendants violated R.A.'s rights under the Fourteenth Amendment by failing to feed him, by failing to administer or document his prescribed medications, by failing to monitor his medical condition, by failing to respond to repeated warnings from his mother, his primary-care physician, and his long-standing treating psychiatrist, and by failing to supervise him sufficiently to prevent his access to controlled and illicit substances within the Facility.

50. As a result of Defendants' actions, Plaintiffs suffered and continue to suffer emotional, physical, and financial harm.

## VI.  COUNT II – VIOLATION OF 42 U.S.C. § 1983 (MONELL LIABILITY)

51. Plaintiffs hereby replead and incorporate by reference paragraphs 1–50.

52. At all relevant times, Bashor acted under color of state law within the meaning of 42 U.S.C. § 1983 by performing a function traditionally reserved to the state and pursuant to its license and contractual relationship with the State of Indiana and its political subdivisions.

53. R.A. had a protected liberty interest in bodily integrity, safety, adequate nutrition, and appropriate medical and psychiatric care while in custody.

54. Bashor maintained a policy or widespread custom of failing to maintain contemporaneous medication-administration records, evidenced by the systematic blank-MAR pattern, signature-only cover sheets, and bulk back-signing of records months after the dates of service.

55. Bashor maintained a policy or widespread custom of inadequate supervision permitting unauthorized substance access by court-placed residents.

56. Bashor maintained a policy or widespread custom of disregarding the warnings of treating physicians and parents concerning the correct administration of residents' psychotropic medications, evidenced by Bashor's persistent failure to correct its medication-administration practices following more than ten warnings from R.A.'s long-standing treating psychiatrist.

57. Bashor failed to train its staff on medication administration, allergy verification, response to acute medical deterioration, communication with parents and guardians, and contraband control.

58. Bashor's policies, customs, and failures to train were maintained with deliberate indifference to the rights of the residents in its care, including R.A.

59. Each of the policies, customs, and failures described above was the moving force behind the deprivation of R.A.'s constitutional rights.

60. As a result of Defendants' actions, Plaintiffs suffered and continue to suffer emotional, physical, and financial harm.

### VII.  COUNT III – VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

61. Plaintiffs hereby replead and incorporate by reference paragraphs 1–60.

62. R.A. is a qualified individual with a disability within the meaning of the ADA, with documented diagnoses including Autism Spectrum Disorder, ADHD, anxiety disorders, depression, dyslexia, Avoidant/Restrictive Food Intake Disorder–spectrum eating pattern, and a documented cognitive impairment.

63. Bashor operates a place of public accommodation within the meaning of 42 U.S.C. § 12181(7), including as a "social-service-center establishment."

64. Bashor discriminated against R.A. on the basis of his disability through multiple actions and omissions that denied him equal access to the services Bashor purports to provide, including the failure to accommodate his eating-disorder profile, his communication and sensory profile, and his medication-administration and monitoring needs.

65. Defendants' actions and inactions created an environment that was severe and pervasive enough to deprive R.A. of access to the services Bashor was obligated to provide.

66. As a result of Defendants' actions, Plaintiffs suffered and continue to suffer emotional, physical, and financial harm.

### VIII.  COUNT IV – VIOLATION OF SECTION 504 OF THE REHABILITATION ACT

67. Plaintiffs hereby replead and incorporate by reference paragraphs 1–66.

68. R.A. is a qualified individual with one or more disabilities within the meaning of 29 U.S.C. § 705(20).

69. Bashor receives federal financial assistance, including Title IV-E foster-care funds and other federal funds passed through the Indiana Department of Child Services, and is therefore subject to Section 504.

70. Bashor discriminated against R.A. on the basis of his disabilities and was deliberately indifferent to his known disability-related needs.

71. Defendants' actions and inactions created an environment that was severe and pervasive enough to deprive R.A. of meaningful access to the services Bashor was obligated to provide.

72. As a result of Defendants' actions, Plaintiffs suffered and continue to suffer emotional, physical, and financial harm.

## IX.  COUNT V – NEGLIGENCE

73. Plaintiffs hereby replead and incorporate by reference paragraphs 1–72.

74. Defendants owed R.A. a duty of reasonable care arising from their custodial relationship with him, including the duty to administer prescribed medications competently and to document doing so; to provide adequate nutrition consistent with his documented eating-disorder profile; to monitor vital signs, sleep, intake, output, and urination; to respond to reports of deterioration from family members and treating physicians, including R.A.'s long-standing treating psychiatrist; to prevent his access to controlled and illicit substances; and to provide timely medical care for emerging illness.

75. Defendants breached each of these duties as set forth in the factual allegations above.

76. Plaintiffs' negligence claims sound, in part, in ordinary tort and not in medical malpractice; to the extent any portion of this Count may be deemed to sound in medical malpractice, Plaintiffs reserve all rights under the Indiana Medical Malpractice Act.

77. As a direct and proximate result of Defendants' breaches, R.A. suffered the injuries described above, and Plaintiffs suffered and continue to suffer emotional, physical, and financial harm.

14

## X.  COUNT VI – NEGLIGENT HIRING, TRAINING, RETENTION, AND SUPERVISION

78. Plaintiffs hereby replead and incorporate by reference paragraphs 1–77.

79. Bashor and Defendant Sean McCrindle had a duty to hire, train, retain, and supervise competent staff to provide custodial, medical, nutritional, supervisory, and developmental care to court-placed juveniles, including R.A.

80. Bashor and Sean McCrindle hired and retained staff who were inadequately trained or unqualified to administer medications, document care, monitor residents with complex medical and developmental profiles, recognize medical deterioration, prevent unauthorized substance access, and respond appropriately to the warnings of treating physicians and parents; failed to provide ongoing training on these subjects; and failed to supervise such staff.

81. These breaches were a direct and proximate cause of the injuries to R.A. set forth above, and as a result Plaintiffs suffered and continue to suffer emotional, physical, and financial harm.

## XI.  COUNT VII – VIOLATION OF THE INDIANA CRIME VICTIMS RELIEF ACT (IND. CODE § 34-24-3-1)

82. Plaintiffs hereby replead and incorporate by reference paragraphs 1–81.

83. At all times relevant, R.A. was a dependent within the meaning of Ind. Code § 35-46-1-1, and Defendants had the care of R.A. within the meaning of Ind. Code § 35-46-1-4.

84. Defendants, having the care of R.A., knowingly placed R.A. in a situation that endangered his life and health and deprived him of necessary support, by failing to provide him with adequate nutrition, by knowingly failing to administer his prescribed medications competently after being informed on more than ten occasions by R.A.'s

long-standing treating psychiatrist that they were doing so incorrectly, by failing to monitor his medical condition, and by failing to prevent his access to controlled and illicit substances, in violation of Ind. Code § 35-46-1-4.

85. Defendants' conduct caused R.A. serious bodily injury within the meaning of the statute.

86. Plaintiffs have suffered pecuniary loss as a result of Defendants' violation of Ind. Code § 35-46-1-4 and are entitled to recover under Ind. Code § 34-24-3-1 an amount not to exceed three times their actual damages, the costs of this action, and reasonable attorneys' fees.

## XII.  COUNT VIII – BREACH OF CONTRACT – THIRD-PARTY BENEFICIARY

87. Plaintiffs hereby replead and incorporate by reference paragraphs 1–86.

88. Bashor was party to one or more contracts with the State of Indiana, its agencies, and political subdivisions, including the St. Joseph County Juvenile Probation Department, governing the residential, custodial, medical, supervisory, and developmental services Bashor would provide to court-placed juveniles, including R.A. R.A. was the intended third-party beneficiary of those contracts.

89. Bashor materially breached those contracts by failing to provide the services it was contractually obligated to provide.

90. As a direct and proximate result of Bashor's breaches, Plaintiffs suffered and continue to suffer emotional, physical, and financial harm.

## XIII.  COUNT IX – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

91. Plaintiffs hereby replead and incorporate by reference paragraphs 1–90.

92. Plaintiff Angel I. Ash was directly and proximately involved in the events giving rise to R.A.'s injuries. Among other things, she made repeated reports of R.A.'s deterioration to

Bashor that Bashor disregarded; she insisted that R.A. be transferred to the emergency department on April 28, 2025; and she was physically holding R.A. up to use the bathroom at Lutheran Hospital when R.A. stopped breathing, turned grey, and went into cardiac arrest. She was about to begin cardiopulmonary resuscitation herself when the attending nurse called Code Blue. She remained with R.A. throughout his eleven-day intensive-care admission at Riley Hospital.

93. As a direct and proximate result of Defendants' negligent, reckless, and deliberately indifferent acts and omissions, Plaintiff Angel I. Ash has suffered, and continues to suffer, severe emotional distress, anxiety, grief, sleep disturbance, and other foreseeable emotional and psychological injuries.

94. As a result of Defendants' actions, Plaintiffs suffered and continue to suffer emotionally and financially.

### XIV.  PRAYER FOR RELIEF

95. Plaintiffs hereby replead and incorporate by reference paragraphs 1–94.

96. Plaintiffs were harmed as a result of Defendants' actions and seek to be made whole financially.

97. Plaintiffs seek financial damages in an amount to be determined at trial, including compensatory damages for past and future medical, psychiatric, neuropsychological, therapeutic, and educational expenses; past and future pain and suffering; loss of normal life experiences; loss of earning capacity; and all other damages permitted by law.

98. Plaintiffs are entitled to all damages, including but not limited to compensatory and punitive damages, together with treble damages, costs, and reasonable attorneys' fees under the Indiana Crime Victims Relief Act, Ind. Code § 34-24-3-1.

99. Plaintiffs are entitled to declaratory and injunctive relief, including an order requiring Bashor to revise its policies, practices, procedures, and staff training to bring its residential-treatment program into compliance with the Constitution and federal and state law.

100.    Plaintiffs request a trial by jury to hear their claims.

101.    Plaintiffs' attorneys' fees should be reimbursed under 42 U.S.C. § 1988(b), 29 U.S.C. § 794a(b), 42 U.S.C. § 12205, Ind. Code § 34-24-3-1, and all other applicable fee-shifting authorities.

### XV.  CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully pray that this Court finds against Defendants and for all other relief deemed just.

Respectfully submitted,

Curlin & Clay Law Association of Attorneys,

*/s/ Bridget M. Boland*
Bridget M. Boland (Atty No. 39170-49)
Curlin & Clay Law Association of Attorneys
8510 Evergreen Ave., Ste. 200
Indianapolis, IN  46240
Telephone (317) 202-0301
Facsimile (317) 536-3553
bboland@curlinclaylaw.com

**<u>CERTIFICATE OF SERVICE</u>**

I, the undersigned, hereby certify that a copy of the above has been served on the

following by electronic mail or first-class mail to the following individual on the following date:

Date: July 1, 2026

Sean McCrindle, President & CEO
Bashor Children's Home, Inc.
62226 County Road 15
Goshen, IN  46526

*/s/ Bridget M. Boland*
Bridget M. Boland
Attorney for Plaintiffs
